# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

VERDANA L. SPEAKMAN,     )
    )
    **Plaintiff,**    )
    )
v.    )    **Case No. CIV-17-130-SPS**
    )
COMMISSIONER of the Social    )
Security Administration,    )
    )
    **Defendant.**    )

## OPINION AND ORDER

The claimant Verdana L. Speakman requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty-five years old at the time of the administrative hearing (Tr. 35). She completed her GED, and has previously worked as a cleaner/janitor and casino cashier (Tr. 28, 205). The claimant alleges she has been unable to work since January 10, 2013, due to a triple aorta aneurysm and resultant surgery, severe bowel problems, using a walker for support to walk, mental health, depression, anxiety, and inability to lift over five pounds (Tr. 204).

### Procedural History

On May 13, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on February 23, 2015. Her applications were denied. ALJ Elizabeth B. Dunlap conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 10, 2015 (Tr. 20-29). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. She found that the claimant had the residual functional capacity (RFC) to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). The ALJ thus

concluded that the claimant could return to her past relevant work as a casino cashier (Tr. 28).

## Review

The claimant contends that the ALJ erred by failing to account for her mental impairments in the RFC. The Court agrees, and the decision of the Commissioner is therefore reversed.

At step two, the ALJ determined that the claimant had the severe impairments of history of thoracoabdominal aneurysm, status post surgical repair and revascularization of celiac artery, chronic superior mesenteric artery occlusion, status post left femoral artery and vein reduction, osteoarthritis, and morbid obesity (Tr. 23). Additionally, she determined that the claimant's medically determinable impairments of depression and anxiety were not severe (Tr. 23). The evidence in the record related to the claimant's mental impairments indicates that her treating physician, Deepak Jaiswal, M.D., treated her regularly for anxiety (Tr. 361, 472, 528-568). His treatment notes reflect a consistent diagnosis of moderate depression, along with reports of panic attacks that appeared to wax and wane in frequency but never completely dissipated (Tr. 529-568).

Consultative physical examiner Terry Kilgore, M.D. examined the claimant on October 8, 2013, and noted a several-year history of depression and anxiety with hostility, including a difficult time getting along with people, as well as maintaining personal hygiene standards (Tr. 453). He assessed the claimant with massive obesity, major depression, chronic anxiety, possible personality disorder, aortic abdominal aneurysm repair, probable moderate COPD, hypertension, and left flank pain (Tr. 455).

On October 25, 2013, C. Robin McGirk, Ph.D., conducted a psychological evaluation of the claimant (Tr. 465). Dr. McGirk found that the claimant demonstrated, *inter alia*, a tendency to give unsolicited information of a digressive design; a compromised range of performance with regard to concentration, but was able to focus and converse about events relevant to her own history; a low average to borderline range of intellectual functioning; and low average insight and judgment (Tr. 467-468). Dr. McGirk assessed her with grief reaction and depressive disorder NOS, as well as mixed personality disorder (Tr. 469).

In 2014, the claimant began mental health treatment with Mental Health Services of Southern Oklahoma (Tr. 503). Upon intake, she was assessed with major depressive disorder, recurrent episode unspecified, and assigned a global assessment of functioning score of 41 (Tr. 510). She was given a fair prognosis, dependent on her ability to attend her appointments (Tr. 512). A medication management note from June 5, 2014 indicated that her depression and anxiety were worsening, and that the claimant reported secluding herself at home and having multiple panic attacks (Tr. 523).

State reviewing physicians concluded that the claimant's affective and personality disorders were nonsevere because she had mild restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, and pace, with no episodes of decompensation (Tr. 87, 102). They found the allegations of mental impairment "substantiated but not determined to impose significant limitations" (Tr. 88, 103).

In her written opinion, the ALJ determined the claimant's severe and nonsevere impairments at step two. At step two, the ALJ also summarized the records related to the claimant's mental health treatments, and determined that the claimant had mild limitations in the three areas of functional limitation, with no episodes of decompensation of extended duration (Tr. 23-24). At step four, the ALJ summarized the claimant's hearing testimony, as well as the medical records related to the claimant's physical impairments, but made no mention of her mental impairments other than in summaries of diagnoses from the claimant's treating and consultative physicians (Tr. 25-28). Ultimately, the ALJ determined the claimant was not disabled.

The claimant alleges error with regard to the nonsevere mental impairments. Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) *and* 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe

impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because although the ALJ mentioned each impairment at step two, the ALJ entirely failed to mention, much less consider the "cumulative effect of claimant's impairments," at step four. *Langley*, 373 F.3d at 1123. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Importantly, the ALJ here provided no discussion of evidence to instruct this Court how the assigned RFC, which includes *no* psychologically-based limitations, actually accounts for the claimant's documented impairments including depression and anxiety. The Tenth Circuit has held that "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells v Colvin*, 727 F.3d 1061, 1068-1069 (10th Cir. 2013). "To sum up, to the extent the ALJ relied on his finding of non-severity as a substitute for adequate RFC analysis, the Commissioner's regulations demand a more thorough analysis." *Wells*, 727 F.3d at 1069.

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

### Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 24th day of September, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**